# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Michael McCoy,

                    Petitioner,

                                        Case No. 18-cv-10179

v.

                                        Judith E. Levy

Jeffrey Howard,                         United States District Judge

                    Respondent.

_____/

**OPINION AND ORDER GRANTING THE MOTION TO WITHDRAW DAVID L. MOFFITT'S APPEARANCE [24], VACATING THE STAY [20], DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS [1], DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL _IN FORMA PAUPERIS_**

Michael McCoy, ("Petitioner"), incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, filed a _pro se_ petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for assault with intent to commit murder, Mich. Comp. Laws § 750.83, armed robbery, Mich. Comp. Laws § 750.529, assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, felon in possession of a firearm (felon-in-possession), Mich. Comp. Laws § 750.224f(2), and possession of a firearm during the commission of

a felony (felony-firearm) (second offense), Mich. Comp. Laws § 750.227b.

Also before the Court is a motion to withdraw the appearance of

Petitioner's former counsel, David Moffitt, filed by Tameka L. Tucker, an

associate of Moffitt, who has passed away ("Motion to Withdraw"). (ECF

No. 24.) For the reasons set forth below, the Motion to Withdraw, (ECF

No. 24), is granted and the petition for a writ of habeas corpus, (ECF No.

1), is denied with prejudice.

## I. Background

Petitioner was convicted following a jury trial in Wayne County

Circuit Court. The Court recites verbatim the relevant facts relied upon

by the Michigan Court of Appeals, which are presumed correct on habeas

review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d

410, 413 (6th Cir. 2009):

> In August 2014, Lawrence Martin pulled into a gas station
> parking lot. He testified that he noticed two vehicles near the
> gas pumps, a Mercury Marquis and a Ford Escort. He also
> saw defendant and a man with braids near the gas pumps.
> Martin testified that he had known defendant since
> childhood, but they had recently had a falling out. Martin
> believed that a reason for the falling out was that he had
> burned down a crack house that defendant had set up near
> Martin's grandmother's house.
>
> Martin testified that he went into the gas station to buy a
> makeshift crack pipe for someone else. He told the clerk to

hurry up because he was "beefing with those guys out here." When Martin walked outside, defendant and the man with braids surrounded him. Martin testified that defendant ordered him to "[r]un them pockets," so he handed over a phone and some money. He testified that another man came out [of] the gas station, walked up to him, and pointed a pistol at him. Martin testified that the man with the gun asked "what up now" and called him a derogatory name. Martin then tussled with defendant, the man with braids, and the man with the gun. According to Martin, during the tussle, defendant ordered the man with the gun to shoot Martin. The man shot Martin in the leg.

Martin limped to the street where his friend Tracy Jackson was driving down the street and saw him. Jackson rolled down her window and Martin told her he had just been shot. At that point, the two vehicles from the gas station, the Mercury Marquis and the Ford Escort, pulled up behind Jackson's car. Jackson testified that defendant told her "not to let [Martin] in the car because he's on some bullshit." She testified that Martin jumped into her car through an open back seat window and she drove off quickly because Martin told her there were people shooting at them. Jackson's car was shot at and a bullet hole was discovered in the rear passenger-side door.

*People v. McCoy*, No. 326142, 2016 WL 3571022, at *1 (Mich. Ct. App. June 30, 2016).

Petitioner's conviction was affirmed on appeal. *Id.*; *People v. McCoy*, 500 Mich. 934 (2017) (mem.). Petitioner now seeks a writ of habeas corpus challenging the sufficiency of the evidence to sustain his five convictions.

3

Respondent responded to the petition and Petitioner replied. (ECF Nos. 8, 15.) Petitioner also requested discovery, appointment of counsel, and that the Court stay and hold his petition in abeyance pending a ruling on his request for discovery, (ECF Nos. 10, 11, 12), all of which the Court denied. (ECF No. 13.)

Petitioner subsequently filed a Motion for Stay and Abeyance to Exhaust State Remedies. (ECF No. 18.) He sought to "raise and exhaust new federal constitutional claims" in a state post-conviction motion. (*Id.* at PageID.868.) The Court granted the motion, stayed the case, and held it in abeyance pending Petitioner's return to the state courts to seek state post-conviction relief. *McCoy v. Winn*, No. 18-cv-10179, 2020 WL 428355 (E.D. Mich. Jan. 28, 2020). The Court gave McCoy ninety days from the date of the order to file a post-conviction motion for relief from judgment with the state trial court. After exhausting his state-court remedies, Petitioner was required to return to this Court and request that the stay be lifted, at which point he could file an amended petition. *Id.* at *2. If he failed to meet those conditions, the Court stated that it "may vacate the stay and adjudicate Petitioner's original petition as filed." *Id.* Petitioner

4

subsequently filed a notice stating that he had filed his post-conviction motion in compliance with the Court's order. (ECF No. 23, PageID.912.)

Nearly five years later, Tameka L. Tucker, an associate of Petitioner's former lawyer David Moffitt, filed the Motion to Withdraw, seeking to withdraw Moffitt's appearance as counsel. (ECF No. 24.) Tucker informed the Court that Petitioner retained Moffitt in 2020 for "the limited purpose of representing [Petitioner] on a motion for relief from judgment under Mich. Ct. Rule 6.500 in the state trial court and filing a motion in this case . . . seeking an order from this Court staying these habeas proceedings and holding them in abeyance while [Petitioner] exhausted state postconviction remedies." (*Id.* at PageID.914–915.) Tucker stated that Petitioner's post-conviction motion was denied in the state trial court, but after conferring with Moffitt, Petitioner did not pursue any appeal in the state appellate courts—either by further retaining Moffitt or by filing an appeal on his own behalf. (*Id.* at PageID.915–916.) Moffitt passed away less than a year later in 2022. (*Id.* at PageID.914.)

The Court issued an order requiring Tucker "to serve a copy of the [M]otion to [W]ithdraw as counsel on Petitioner by first-class mail within

fourteen days" of the Court's Order. (ECF No. 25, PageID.928.) Tucker did so. (ECF No. 27.)

The Court ordered that Petitioner would have thirty days from the receipt of the Motion to Withdraw to respond, after which the Court would rule. (ECF No. 25, PageID.928.) It also set forth that given Petitioner's apparent failure to exhaust his claims or file an amended habeas petition "based on the claims he indicated were to be exhausted in state court," Petitioner was ordered "to show cause [within 45 days] why the Court should not 'vacate the stay and adjudicate Petitioner's original petition as filed.'" (*Id.* (quoting *McCoy*, 2020 WL 428355, at *2).) Approximately four months later Petitioner has not filed a response to the Motion to Withdraw or to the Court's order to show cause.

## II.    The Motion to Withdraw

As set forth above, the Court has provided Petitioner with the opportunity to respond to the Motion to Withdraw. He did not take that opportunity.

The Michigan Rules of Professional Conduct permit an attorney to withdraw if there is good cause to do so. MRPC 1.16(b)(6). Compliance with those rules does not guarantee a right to withdraw, but "withdrawal

6

is presumptively appropriate where the rule requirements are satisfied." *Brandon v. Blech*, 560 F.3d 536, 538 (6th Cir. 2009) (discussing Model Rule of Professional Conduct Rule 1.16(b), which is substantially identical to the corresponding Michigan Rule of Professional Conduct). A motion to withdraw must also be served upon a habeas petitioner to provide notice and an opportunity to object. *See, e.g.*, *Griffin v. LeMaster*, 37 F. App'x 348, 351, 354 (10th Cir. 2002). Given that Moffitt is deceased, which clearly constitutes good cause, and Petitioner has received notice and the opportunity to object, the applicable requirements have been met and, accordingly, the Motion to Withdraw is granted. (ECF No. 24.)

## III.   The Stay

Petitioner did not meet the conditions set by the Court when it stayed his petition. *McCoy*, 2020 WL 428355, at *2. At that time, the Court explained that failure to meet those conditions would mean the Court would "vacate the stay and adjudicate Petitioner's original petition as filed." *Id*. Petitioner also declined to respond to the Court's order to show cause why the Court should not vacate the stay and adjudicate Petitioner's original petition as filed. (ECF No. 25, PageID.928.) Accordingly, because Petitioner has not pursued the actions that

7

originally justified a stay and because he has not shown cause for doing

otherwise, the Court vacates the stay. (ECF No. 20.)

## IV.   The Petition for Writ of Habeas Corpus

### A.   Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of,
>> clearly established Federal law, as
>> determined by the Supreme Court of the
>> United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in
>> light of the evidence presented in the State
>> court proceeding.

28 U.S.C. § 2254(d). A decision of a state court is "contrary to" clearly

established federal law if the state court arrives at a conclusion opposite

to that reached by the Supreme Court on a question of law or if the state

court decides a case differently than the Supreme Court has on a set of

materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11.

"A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)) (citation modified). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, to obtain habeas relief in

federal court, a state prisoner is required to show that the state court's rejection of their claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief if it is within the "realm of possibility" that fairminded jurists could find the state-court decision to be reasonable. *See Woods v. Etherton,* 578 U.S. 113, 118 (2016).

### B.  Analysis

Petitioner argues that the evidence was insufficient to sustain his five convictions because the prosecution failed to prove the element of intent required to convict him of the charges. (ECF No. 1, PageID.15.)

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not

> ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318–19 (internal citation and footnote omitted) (emphasis in the original). For a federal habeas court reviewing a state-court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state-court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under AEDPA." *Id.*

At trial, the victim, Martin, positively identified Petitioner as one of his assailants. (ECF No. 9-6, PageID.264, 273–275.) The Court notes that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis,* 752 F.2d 1142, 1144 (6th Cir. 1985) (internal citations omitted); *see also Brown v. Burt,* 65 F. App'x 939, 944 (6th Cir. 2003). But Petitioner submits that the evidence is insufficient to sustain his convictions because the victim, Martin, is unreliable. On habeas review,

11

a federal court does not reweigh the evidence or determine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 433–34 (1983). "It is the province of the factfinder . . . to weigh the probative value of the evidence and resolve any conflicts in the testimony." *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Petitioner further alleges that the evidence presented at trial was insufficient to sustain his convictions, including the conclusion that he was an aider and abettor. (ECF No. 1, PageID.15.)

To support a finding under Michigan law that a defendant aided and abetted a crime, the prosecutor must show that:

> (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F.3d 315, 322 (6th Cir. 2007) (citing *People v. Carines*, 460 Mich. 750, 768 (1999)).

12

Petitioner alleges that the evidence was insufficient to sustain his conviction for assault with intent to commit murder as an aider and abettor. Under Michigan law, the elements of assault with intent to commit murder in Michigan are: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *See Warren v. Smith,* 161 F.3d 358, 361 (6th Cir. 1998); *see also Steele v. Withrow,* 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001). The intent to kill element "does not equate with murder." *Warren,* 161 F.3d at 361 (citing *People v. Taylor*, 422 Mich. 554, 567 (1985)). "[A]n intent to kill for purposes of this offense may not be proven by an intent to inflict great bodily harm or a wanton and [willful] disregard of the likelihood that the natural tendency of the acts will likely cause death or great bodily harm." *Id*. "A conviction for assault with intent to commit murder must be premised upon a defendant's specific intent to kill." *Steele,* 157 F. Supp. 2d at 740 (citing *People v. Edwards*, 171 Mich. App. 613, 620 (1988)). The intent to kill, for purposes of the crime of assault with intent to commit murder need not be proved by direct, positive, or independent evidence, and the trier of fact may draw reasonable inferences from the facts and evidence in determining the existence of an intent to kill. *See Taylor*, 422

13

Mich. at 567–68. In determining the defendant's intent, a court may take into account "the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made." *Id.* at 568 (quoting *Roberts v. People*, 19 Mich. 401, 416 (1870)). The use of a lethal weapon will support an inference of an intent to kill. *Steele,* 157 F. Supp. 2d at 740 (citing *People v. Ray*, 56 Mich. App. 610, 615 (1974)).

Petitioner further alleges that the evidence was insufficient to sustain his conviction for assault with intent to do great bodily harm less than murder as an aider and abettor. Under Michigan law, the elements of assault with intent to do great bodily harm less than murder are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm *less than murder*." *Raybon v. United States*, 867 F.3d 625, 632 (6th Cir. 2017) (quoting *People v. Brown*, 267 Mich. App. 141, 147 (2005)) (emphasis in original). Assault with intent to do great bodily harm is a specific intent crime

14

which requires "an intent to do serious injury of an aggravated nature,"
though an actual injury need not occur. *Id.* (internal citations omitted).

The Michigan Court of Appeals rejected Petitioner's claim as
follows:

> Martin's testimony established that defendant ordered the
> man with the gun to shoot him and he was then shot. After
> Martin fled to the street, defendant told Jackson not to allow
> Martin into the vehicle. Martin jumped in the vehicle anyway
> and Jackson sped away. They were pursued by defendant's
> vehicle and another vehicle and were shot at. There was a
> bullet hole in the vehicle. A jury may infer intent to kill from
> the use of a dangerous weapon. *People v. DeLisle,* 202 Mich.
> App 658, 672 (1993); *People v. Dumas,* 454 Mich. 390, 403
> (1997) (opinion by RILEY, J[.]). Viewing this evidence in the
> light most favorable to the prosecution, there was sufficient
> evidence to establish that the man with the gun intended to
> kill Martin when he shot him. It can also be inferred that the
> person who shot at Jackson's car intended to do great bodily
> harm, especially as Martin had entered through a back
> window and there was a bullet hole in one of the back doors.
> Thus the first element to convict on an aiding and abetting
> theory was met. Further, there was sufficient evidence that
> defendant provided actual aid or encouragement to the man
> with the gun given that he instructed him to shoot Martin and
> then jointly pursued Martin after he got in Jackson's vehicle.
> In particular, surveillance video from the location showed
> defendant's vehicle making a u-turn immediately after
> Jackson sped off, followed closely by another vehicle with the
> man with the gun inside. Further, it can be inferred that
> defendant intended the crime to be committed when he

ordered the man with the gun to shoot Martin and then aided him in pursing Jackson. Accordingly, there was sufficient evidence to support defendant's convictions for assault with intent to commit murder and assault with intent to do great bodily harm.

*McCoy*, 2016 WL 3571022, at \*2.

In the present case, there was sufficient evidence for a rational trier of fact to conclude that Petitioner specifically intended to kill Martin. Evidence was presented at trial that tensions existed between Petitioner and Martin, stemming from an incident when Martin burned down a house utilized by Petitioner for selling crack cocaine. (ECF No. 9-6, PageID.330.) Martin testified that the house was located next to his grandmother's house. (*Id.*) Martin further testified that Petitioner and another man approached him when he left the gas station. (*Id.* at PageID.262–263.) Petitioner demanded that Martin empty out his pockets and then instructed the other man to shoot Martin. (*Id.* at PageID.273–275.) The record therefore supports a finding that Petitioner intended to kill Martin.

Martin attempted to flee the scene in Jackson's vehicle, but Petitioner and the other assailants followed Martin in their vehicles as shots were fired at Jackson's car. (*Id.* at PageID.284–286.) Martin

16

entered Jackson's vehicle through a back door window. (*Id.* at PageID.284.) A bullet hole was found in the door. (ECF No. 9-7, PageID.393.) There is therefore record support for a finding that Petitioner intended to do great bodily harm to Martin. *See Brown*, 267 Mich. App. at 147–50.

Sufficient evidence exists from which a reasonable factfinder could find beyond a reasonable doubt that Petitioner aided-and-abetted the above-described conduct with an intent to kill the victim and with the intent to do great bodily harm less than murder.

Petitioner alleges that the evidence was insufficient to sustain his conviction for armed robbery as an aider and abettor. The elements of armed robbery under Michigan law are:

> that (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon.

17

*People v. Chambers*, 277 Mich. App. 1, 7 (2007) (citation modified). "'In the course of committing a larceny' includes acts that occur in an attempt to commit the larceny, or during the commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property or money." *People v. Williams*, 288 Mich. App. 67, 76 (2010) (quoting the Michigan model criminal jury instruction for armed robbery).

Martin testified that Petitioner and two other men surrounded him when he left the store. (ECF No. 9-6, PageID.262, 272.) Petitioner demanded that Martin empty out his pockets and took his keys, money, and cell phone. (*Id.* at PageID.263, 272–274.) After a tussle, one of Petitioner's associates shot Martin on Petitioner's instruction. (*Id.* at PageID.275.) The evidence supports Petitioner's conviction for armed robbery.

Petitioner alleges that the record cannot support his conviction for felon in possession of a firearm. The felon-in-possession statute defines the crime, in relevant part, by setting forth that "[a] person convicted of a specified felony shall not possess, *use*, transport, sell, purchase, carry, ship, receive, or distribute a firearm" in Michigan for a certain defined

18

period. Mich. Comp. Laws § 750.224f(2) (emphasis added). The Michigan

Court of Appeal rejected Petitioner's claim as follows:

> There was no evidence that the man with the gun had a prior
> felony conviction. However, defense counsel stipulated that
> defendant had a prior felony conviction and that his right to
> possess a firearm had not been restored at the time of the
> shooting. Further, viewing the evidence in the light most
> favorable to the prosecution, defendant *used* the firearm when
> he directed the man with the gun to shoot Martin and the man
> with the gun then shot Martin.

*McCoy*, 2016 WL 3571022, at *4 (emphasis added).

Trial counsel indeed made the stipulation described by the

Michigan Court of Appeals. (ECF No. 9-7, PageID.491.) "Every federal

appellate court that has addressed the issue has held that by entering

into [a] stipulation, a criminal defendant waives his right to assert the

government's burden of presenting evidence to the jury on the stipulated

elements of the criminal offense." *Mattox v. Davis,* 549 F. Supp. 2d 877,

909 (W.D. Mich. 2008) (collecting cases). Petitioner's stipulation that he

was ineligible to possess a firearm waived his right to contest the

sufficiency of the evidence as to that element of the offense. *Id.* at 910.

Further, the Michigan Court of Appeals' holding about Petitioner's "use"

of a firearm was neither contrary to, nor an unreasonable application of,

Supreme Court decisions, so as to entitle Petitioner to habeas relief.

19

Petitioner alleges that the record cannot support his conviction for felony firearm as an aider and abettor. The elements of felony-firearm are that the defendant "possessed a firearm while committing, or while attempting to commit, a felony offense." *Parker v. Renico,* 506 F.3d 444, 448 (6th Cir. 2007). The Michigan Court of Appeals found that there was sufficient evidence to support Petitioner's conviction for that crime:

> There was also sufficient evidence to support defendant's conviction for felony-firearm. MCL 750.227b(1) provides that "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . is guilty of a felony . . . ." "Establishing that a defendant has aided and abetted a felony-firearm offense requires proof that a violation of the felony-firearm statute was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that assisted in the commission of the felony-firearm violation, and that the defendant intended the commission of the felony-firearm violation or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement." *People v. Moore,* 470 Mich. 56, 70–71 (2004). The evidence established that the man with the gun committed a felony, namely assault with intent to commit murder, while in possession of a pistol. Thus, there is evidence that felony-firearm was committed. Second, defendant told the man with the gun to shoot Martin, which is sufficient to establish that defendant gave encouragement that assisted in the commission of the felony-firearm violation. That same evidence also supports that he had knowledge that the man with the gun intended to commit the crime. As such, there was

20

sufficient evidence to support defendant's felony-firearm conviction.

*McCoy*, 2016 WL 3571022, at *3.

As set forth above, the record supports the conclusion that Petitioner and two other men robbed Martin, that Petitioner instructed an associate to shoot Martin, and that when Martin fled in a car, Petitioner and his associates pursued Martin and fired shots at the vehicle. The Michigan Court of Appeals reasonably found Petitioner guilty of felony-firearm as an aider and abettor when he instructed another man to shoot Martin and then proceeded to pursue and shoot at Martin as he fled.

Petitioner is not entitled to habeas relief.

### C.   Conclusion

Accordingly, the petition for a writ of habeas corpus is denied with prejudice.

The Court denies a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate such a denial, they must show that "reasonable jurists could debate whether," or agree that, "the petition should have been resolved

in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (citation modified). When a district court rejects a habeas petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484.

For the reasons set forth above, the Court denies Petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. The Court also denies Petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V.   ORDER

The Court **GRANTS** the Motion to Withdraw, (ECF No. 24), and **VACATES** the stay. (ECF No. 20.)

The Court **DENIES WITH PREJUDICE** the Petition for a Writ of Habeas Corpus, (ECF No. 1), and **DENIES** a Certificate of Appealability.

Petitioner is **DENIED** leave to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

22

Dated: August 7, 2025
Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 7, 2025.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager